**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| JENNIFER A. YOUNGS,<br><br>    Plaintiff,<br><br>            v.<br><br>WILLIAM P. BARR, UNITED STATES ATTORNEY GENERAL, UNITED STATES DEPARTMENT OF JUSTICE and MARK REDMILES, in his individual capacity,<br><br>    Defendants. | Civil Action No. 3:20-cv-02758-JMC-SVH<br><br>**COMPLAINT<br>AND JURY TRIAL DEMAND** |

## INTRODUCTION

Plaintiff Jennifer Youngs was a highly-trained financial litigator with over a decade of experience in federal service when she came to work for the United States Department of Justice in February 2017. Just eight months later, despite performing her job duties well, she was fired by her direct supervisor, Mark Redmiles. Redmiles claimed that he fired Ms. Youngs solely because of a handful of incidents in which she failed to tell him where she was as quickly as he liked. But a number of material inconsistencies in sworn statements that Mr. Redmiles gave in administrative proceedings below exposes that alleged justification as a mere pretext. The main reason that Mr. Redmiles fired Ms. Youngs is that she refused to surrender to his relentless campaign of sexual harassment—a campaign in which he asked Ms. Youngs for oral sex three times in six months. As Ms. Youngs continued to rebuff Redmiles' solicitations, his treatment of

1

her at work became more aggressive and unreasonable, and ultimately culminated in her unlawful termination.

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and Title I of the Civil Rights Act of 1991, and under the Americans with Disabilities Act of 1990 ("ADA"), to correct unlawful employment practices on the basis of sex (female) and disability (chronic migraine) to provide appropriate relief to Plaintiff.  As set forth with greater particularity herein, Plaintiff alleges that the United States Department of Justice ("DOJ") subjected Plaintiff to an unlawful, discriminatory, and sexually hostile work environment perpetuated by and through DOJ's Supervisor at the Executive Office for United States Attorneys ("EOUSA"), attorney Mark Redmiles.  Plaintiff further alleges that the discriminatory and sexually hostile work environment created by DOJ culminated in Plaintiff's discharge because of her disability, her sex (female), and her protected opposition to Redmiles' unlawful conduct.  Finally, Plaintiff further contends that Mr. Redmiles' conduct constituted the intentional infliction of emotional distress under South Carolina law.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343.  This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 2000e-5(f)(1) and (3); the Americans with Disability Act of 1990 (as amended), 29 U.S.C. §§ 621-634; Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*.; and pursuant to the regulations governing federal employees, 42 C.F.R. § 1614.407.  The amount in controversy in this action exceeds the jurisdictional minimums of this Court.

2.      Venue is proper with this Court as substantially all employment practices alleged to be unlawful were committed while Plaintiff was employed at her work location in Columbia, South Carolina.

**PARTIES**

3.      Plaintiff, Jennifer Youngs, is a citizen and resident of the State of South Carolina.

4.      Defendant, William P. Barr, is the current United States Attorney General for the United States Department of Justice, an agency of the United States of America.

5.      Defendant, Mark Redmiles, is, upon information and belief, a resident of a State other than South Carolina.  Mr. Redmiles is subject to the jurisdiction of this Court because he committed wrongful and tortious acts that injured the Plaintiff in South Carolina.

6.      At all relevant times, Defendant DOJ has continually conducted DOJ business in the State of South Carolina, and in the City of Columbia, and has continually employed at least fifteen (15) employees.

7.      At all relevant times, Defendant has been continuously an employer engaged in an industry affecting commerce within the meaning of Title VII.

8.      At all times relevant hereto, Defendant continuously employed in excess of five hundred (500) employees.

**FACTUAL ALLEGATIONS**

9.      Plaintiff was terminated from her employment with Defendant on October 13, 2017.

10.     On October 19, 2017, prior to the expiration of the forty-five (45) day time limit for reporting Defendant's unlawful employment actions, Plaintiff contacted the EEO office of DOJ regarding those unlawful actions.  Plaintiff filed a "Pre-Complaint" form with DOJ EEO

staff as required for the initial "informal" EEO process, alleging discrimination based on sex (female), physical and mental disability (chronic migraine), sexual harassment, harassment/hostile work environment, and reprisal.

11.     Plaintiff participated fully in this informal EEO process, including alternative dispute resolution discussions.  The informal process failed to yield any results and was terminated on January 16, 2018.

12.     Plaintiff filed a formal Complaint of Discrimination with the EEOC on January 29, 2018, prior to the expiration of the fifteen (15) day time limit to do so.  The basis of this Complaint was discrimination based on sex (female), physical and mental disability (chronic migraine), sexual harassment/hostile work environment, and reprisal.

13.     The formal EEOC process proceeded through discovery, including depositions, and DOJ filed a motion for summary judgment on Plaintiff's claims, which was denied. Subsequent mediation attempts again were unsuccessful.

14.     Thereafter, Plaintiff filed a motion to dismiss the EEOC proceedings to allow her to file the instant Complaint.  The EEOC entered its order dismissing the EEOC matter on April 30, 2020.  The Complaint Adjudication Office of the U.S. Department of Justice issued its notice of closure of Plaintiff's administrative EEOC case on May 14, 2020.

15.     All conditions precedent to the institution of this lawsuit have been fulfilled.

16.     Plaintiff received a law degree from the University of North Carolina in 1996. After clerking for a bankruptcy judge in Charlotte, North Carolina, she worked as a litigator for two private law firms until 2003.  She then joined the U.S. Attorney's Office for the Western District of North Carolina, spending the next ten years (2003-2013) as an Assistant U.S. Attorney.  In addition to the typical case load handled by her civil litigation colleagues, Plaintiff

was the sole lawyer in the office's financial litigation unit. In that capacity, she developed an expertise in asset forfeiture and financial litigation, frequently offering classes to other government lawyers at the National Advocacy Center in Columbia, South Carolina. She also won awards from two separate United States Attorneys General for her work.

17. Plaintiff left the U.S. Attorney's Office in 2013 to become an equity partner at a private law firm, where she specialized in bankruptcy matters and white collar criminal defense. She left that firm in November 2015 to move to South Carolina, hoping to return to federal service. After speaking to Defendant Mark Redmiles and his supervisor, Dan Villegas (her eventual supervisors during the relevant 2017 time period), at Defendant DOJ about her interest in returning to federal service in the area of financial litigation, and upon their recommendation, Plaintiff accepted a non-lawyer position as a supervisor with MVM—a company that had secured a federal contract to run the DOJ's Support Operations Services program ("SOS") in Columbia. SOS's purpose was to assist U.S. Attorney's Offices, on a nationwide basis, with their financial litigation programs. The plan was for Plaintiff to stay in this position until DOJ obtained the funding and position to directly hire a Management Analyst to oversee the SOS program, whereupon Plaintiff would apply for the new position and assumedly be hired.

18. Plaintiff worked with MVM in Columbia from February 2016 to February 6, 2017, whereupon Redmiles, Villegas, and their supervisor, Norm Wong, hired her as a direct employee of Defendant DOJ in the Management Analyst position (again, a non-lawyer position). Redmiles, Villegas, and Wong were located in the Washington, D.C. offices of DOJ, while Plaintiff remained in the Columbia, South Carolina SOS offices.

19. Defendant Redmiles was Plaintiff's direct supervisor at DOJ.

20. Plaintiff had a wide range of substantive job responsibilities while an employee of DOJ. She was the principal point of contact for the federal government in her office space, responsible for handling any problems with the physical conditions of the space. She also was responsible for ensuring the resolution of "glitches" in the computer equipment used by the SOS contract team. Though the two teams of SOS contractors that Plaintiff oversaw (one in Columbia and one in Washington) were contractors and not federal employees, Plaintiff was still responsible for participating in the hiring process for those contractors, verifying their time sheets and monitoring their attendance, ensuring that they had security clearance and access to the work space, and reviewing the accuracy and volume of their work. She also played an important role in EOUSA's effort to recruit additional U.S. Attorney's Offices to the SOS program, making presentations, generating reports and fielding questions to show those offices how they could benefit from participating in the program. Once an office joined the program, Plaintiff worked closely with their attorneys and staff to ensure the work was done in accordance with their local rules and practices, to cure any work backlogs, and to provide assistance with collection of debts.

21. Without prior notice, Plaintiff was terminated by phone on October 13, 2017, after fewer than nine (9) months in the position. The termination was effective immediately and Plaintiff was escorted from the building by security personnel.

22. Defendants have admitted Plaintiff was *not* terminated for substandard or unacceptable work.

23. In the subsequently issued letter of termination signed by Redmiles, Redmiles reported to Plaintiff that she was terminated because she "[had] failed to conduct herself with the judgment and professionalism expected as a member of AOUSA [sic]."

24. Defendant has admitted the language of the termination letter referred solely to alleged discrete time and attendance issues, in particular: (i) Plaintiff not communicating as to her whereabouts from time to time as quickly as he liked, (ii) her being late for one meeting in his office on August 17, 2017, and (iii) her being absent from the office on another occasion and not timely informing him.

25. The purported bases for Plaintiff's termination were mere pretexts, as evidenced by sworn deposition testimony that Defendant Redmiles has given in EEOC administrative proceedings.

26. Between February 28 and March 2, while Plaintiff was in Washington, D.C. working with the Washington SOS staff and participating in scheduled meetings with Redmiles, Villegas, and others, Redmiles came into the room Plaintiff was using as an office on an unannounced visit. He bluntly asked Ms. Youngs for oral sex.

27. Stunned, Plaintiff left the room and went to the restroom to get away from Redmiles.

28. Plaintiff has a chronic migraine condition, a legally recognized condition of disability, of which Redmiles was aware. During 2017, after the first incident of sexual aggression by Redmiles, Plaintiff experienced an uptick in frequency and severity of migraines. Plaintiff worked with her neurologist to bring the condition back under control. Until she was successful in that effort, the migraines caused Plaintiff to use several sick days, time off which she had accrued from her employment with DOJ.

29. In late Spring or early Summer 2017, while Redmiles was in Columbia on other business, he came to Plaintiff's office and was waiting behind her desk when she returned from lunch. Redmiles repeated his request for oral sex from Plaintiff. Plaintiff immediately left her

office, went to the ladies' room to splash water on her face, and worked in the open area of the office (not her private office) for the remainder of the day.

30. Thereafter, even though Plaintiff enjoyed the work she was doing, she began looking for alternative work away from Redmiles. As a "new" employee with a one (1) year probationary period during which she could be fired without the normal protections afforded a federal employee, Plaintiff feared reporting Redmiles' actions would simply result in her termination, as there was no corroborating evidence or witnesses, and because she still had approximately eight (8) months or so left in her probationary year. As a single mother, Plaintiff felt she had no option but to do her work to the best of her ability, and to find a new position before Redmiles continued his harassment or caused her termination for failure to accede to his unlawful demands.

31. In April 2017, Redmiles began closely monitoring Plaintiff's attendance *via* an interoffice Skype computer program, which allowed him to monitor Plaintiff's computer to see if it was being actively used or not, a behavior he exhibited with other female employees previously.

32. Despite Plaintiff timely submitting leave slips for all time off from work (either in advance, or immediately upon return to duty if it could not be submitted in advance), Redmiles did not like Plaintiff taking her accrued leave days or leave for medical issues. Redmiles exhibited this behavior with at least two prior female supervisees at DOJ, of which DOJ management was aware due to prior complaints from those female employees.

33. After Plaintiff took leave for an injury on June 5, despite Plaintiff having contacted SOS staff to inform them of her absence and requesting they inform Redmiles for her (Plaintiff's and SOS. staff's work hours commenced prior to Redmiles'), and despite Plaintiff

8

having submitted the required leave slip the following day upon her return to duty, Redmiles complained to his supervisor, Villegas, about Plaintiff taking leave without notifying him directly. Villegas recommended that the agency's Office of General Counsel be contacted regarding Plaintiff's behavior.

34. In June 2017, Redmiles and/or DOJ conducted a "leave audit" on Plaintiff. The audit showed Plaintiff had taken only leave available to her and had not committed any leave violations.

35. On July 13, 2017, Redmiles, with the knowledge and agreement of management, increased the monitoring of Plaintiff's attendance. Redmiles instituted a "clock in/clock out" procedure, whereby Plaintiff was required to email Redmiles upon arrival at work, and again prior to her departure at the end of the day. Plaintiff complied with this procedure through the remainder of her employment with Defendant.

36. In a timeline of "termination justifying incidents" prepared by Redmiles to support the request to Wong to terminate Plaintiff, Redmiles included entries that "Jennifer takes leave one day for migraines" and "leave request for migraines had increased."

37. The incident that Redmiles cited in his termination letter as the basis for his decision to fire Plaintiff occurred on Thursday, August 17, while Plaintiff was again working in the Washington office for a week of scheduled meetings and work. Plaintiff was scheduled to attend a brief mid-morning interim progress review with Redmiles. In the hours prior to the progress review, and prior to Redmiles' arrival in the office, Plaintiff was meeting and working with the Washington SOS contractor team as scheduled. This meeting occurred in the SOS office, around the corner from Redmiles' office. While working with the team and confirming work product, Plaintiff discovered that a critical issue concerning the entry of joint and several

9

judgments for several U.S. Attorney's Offices had been handled improperly. This was a significant issue that was time-sensitive, required running several reports to determine the breadth of the problem, and required the immediate contact of affected districts to ensure judgments were not improperly released. Plaintiff performed some "immediate triage" with her team to diagnose the issue so it could be resolved as quickly as possible. All of this intense burst of activity, involving communications with district offices, contemporaneous computer work, and a lot of moving parts, caused Plaintiff to be 10-15 minutes late to her interim review with Redmiles. When Plaintiff noticed the time, she immediately left SOS and went straight to. Redmiles' office to see if they could complete the review, but he was not there. Shortly thereafter, he emailed her to reschedule the review to the afternoon of the same day.

38.    The interim performance review that afternoon was cursory and non-substantive, lasting about 20-25 minutes. Redmiles did not comment on Plaintiff's substantive job duties, repeating only on his prior criticisms of her alleged "attendance" issues.

39.    Redmiles then again demanded sexual favors, telling Plaintiff that he would have reviewed her more favorably if she would "put out." Stunned, yet again, by Redmiles' request, Plaintiff left the room. She went back to her temporary office and found a colleague, Laurie Levin, waiting for her. Plaintiff immediately burst into tears, telling Laurie that the review had "gone badly." Unwilling to put Ms. Levin in the difficult position of being required to report the harassment, and unwilling to put herself in a "he said, she said" position of a probationary employee with no corroborating evidence, Plaintiff again chose to not to report the incident—either to Ms. Levin or to other officials within the federal government. As a single mother who desperately needed to keep her job, she hoped that her relatively limited contact with Redmiles would make that job survivable until she could find an alternative position.

40. Indeed, Redmiles had other ideas. Redmiles decided at the August 17 progress review to terminate Plaintiff's employment--an encounter in which Plaintiff rebuffed his solicitations for the third time.

41. Plaintiff reasonably feared retaliation at the hands of Redmiles and his supervisors, as they previously had been made aware of Redmiles' actions towards women and towards employees with medical disabilities and had failed to properly act. Furthermore, Plaintiff was aware of and had read the Report of the Department of Justice Inspector General of May 2017, wherein sexual harassment and other misconduct had been mishandled by Defendant, where victims were demoted, terminated, disciplined and/or ignored, and where perpetrators were given bonuses, promotions, and otherwise given no consequences for their illegal actions. Plaintiff's fear of retaliation and/or further reprisal at work, and thus her failure to report Redmiles' and his supervisor's actions, were reasonable.

42. Although Plaintiff continued to perform her job duties well after that meeting, and even though Plaintiff experienced no other so-called "attendance issues" between August 17 and her October 13 termination, Redmiles persisted in his plans to fire her.

43. Notwithstanding her federal service of over a decade, awards from two United States Attorneys General, her solid performance of actual job duties while employed by DOJ in 2017, her medical disability, and her status as a single mother, Plaintiff was fired by telephone on the afternoon of October 13 and escorted out of the building shortly thereafter.

44. Defendant engaged in sex discrimination against Plaintiff by subjecting her to a continuing course of unwelcome and offensive harassment because of her sex (female). Such harassment was of sufficient severity and/or pervasiveness to create a hostile work environment because of Plaintiff's sex (female).

45. Defendant, acting through Redmiles, terminated Plaintiff because of her sex (female) and in retaliation for her opposition to Redmiles' harassing conduct.

46. Defendant, acting through Redmiles, penalized and terminated Plaintiff in violation of the ADA due to her chronic migraine condition.

47. The effect of the practices complained of hereinabove has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability, her sex, and her conduct in opposition to unlawful employment practices under Title VII and the ADA.

48. The unlawful employment practices complained of hereinabove were intentional.

## FIRST CAUSE OF ACTION
**Sexual Harassment (*Quid Pro Quo* and Hostile Work Environment)**

49. Plaintiff incorporates as if fully restated all of the allegations previously written.

50. Plaintiff was subjected to unwelcome, offensive, sexually discriminatory, and harassing conduct--demands for sex acts--by her DOJ supervisor.

51. The harassing conduct by DOJ against Plaintiff was based upon and directed at Plaintiff due to her gender (female).

52. The environment Plaintiff was subjected to would reasonably be perceived as, and Plaintiff did perceive it to be, hostile and/or abusive.

53. The harassing conduct by DOJ against Plaintiff was sufficiently severe and pervasive so as to unreasonably interfere with Plaintiff's physical health and mental wellbeing, and so as to create an intimidating, hostile, and offensive working environment. DOJ's actions constructively changed Plaintiff's working conditions in violation of Title VII.

54. Plaintiff's refusal to submit to Redmiles' sexual demands resulted in a tangible employment action against Plaintiff in that she was terminated.

55. Defendant was responsible for Redmiles' actions, and knew, or should have known, about the harassment, and failed to take corrective action.

## SECOND CAUSE OF ACTION
### Sex Discrimination

56. Plaintiff incorporates as if fully restated all of the allegations previously written.

57. As a female, Plaintiff is a member of a protected class. During the course of Plaintiff's employment with Defendant, Defendant, by and through its agents and employees, discriminated against Plaintiff in the terms, conditions, and privileges of employment because of her sex (female), in violation of Title VII. The above-described unwelcome sex discrimination created an intimidating, oppressive, hostile and offensive work environment which interfered with Plaintiff's emotional and physical wellbeing.

58. As a result of the hostile and offensive work environment perpetrated by Defendant's agent/employee Redmiles, and maintained by Defendant's other supervisors and Defendant, and Defendant's failure to protect Plaintiff from such discrimination, Plaintiff suffered humiliation, emotional distress, and physical pain.

59. Defendant, by and through its agents, employees, and/or supervisors, failed to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act of Redmiles as described above.

60. Defendant failed to take all reasonable and necessary steps to eliminate sex discrimination from the workplace and to prevent it from occurring in the future.

61. The sex discrimination resulted in an adverse employment action against Plaintiff in that she was terminated.

62. Plaintiff was performing her job duties at a level that met and/or exceeded Defendant's legitimate expectations at the time of the adverse employment action.

13200947v1 90508.00010

63.     As a further direct and proximate result of Defendant's violation of Title VII as described, Plaintiff has been compelled to retain the services of counsel and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

### THIRD CAUSE OF ACTION
**Discrimination Based on Disability**

64.     Plaintiff incorporates as if fully restated all of the allegations previously written.

65.     Plaintiff had a diagnosed disability recognized by the ADA (migraine) during the times pertinent hereto.  This disability caused both physical and mental impairment that substantially limited one or more of Plaintiff's major life activities.

66.     Plaintiff informed her supervisors, Redmiles and Villegas, of this disability.

67.     Plaintiff was qualified for her position as a Management Analyst with Defendant and was able to perform, and did perform, its essential functions.

68.     Plaintiff was subjected to negative job action, including, but not limited to unwarranted scrutiny regarding her time and attendance, the requirement that she "clock in and clock out" by email daily, and ultimately her termination, all based on her disability.

69.     As a direct and proximate result of the Defendant's willful, knowing, and intentional discrimination and retaliation against Plaintiff, Plaintiff has suffered and will continue to suffer pain, humiliation and emotional distress. Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

70.     Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

71.     As a further direct and proximate result of Defendant's violation of Title VII, as described above, Plaintiff has been compelled to retain the services of counsel and has thereby

14

incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

## FOURTH CAUSE OF ACTION
*Against Redmiles Only*
**Intentional Infliction of Emotional Distress**

72. Plaintiff incorporates as if fully restated all of the allegations previously written.

73. The acts that Redmiles committed against the Plaintiff—repeatedly propositioning her for sexual favors, undertaking substantial surveillance and criticism of her work even though her job performance—by his own admission—was excellent; penalizing and criticizing her for her use of justified leave for a medical condition that substantially affected her; and ultimately firing her for her refusal to submit to his sexual demands and for her medical condition—intentionally and/or recklessly inflicted severe emotional distress on the Plaintiff.

74. Redmiles' persistent sexual harassment and other conduct, as aforesaid, was so extreme and outrageous as to exceed all possible bounds of decency, and it must be regarded as atrocious and utterly intolerable in a civilized community.

75. Redmiles' action caused Plaintiff to suffer severe emotional distress, requiring a sustained course of expert psychiatric and other care.

76. The emotional distress suffered by the Plaintiff was so severe that no reasonable person could be expected to endure it.

## **PRAYER FOR RELIEF**

Wherefore, having fully set forth her Complaint against Defendants, Plaintiff prays:

A.  That judgment be entered against Defendant DOJ for actual and punitive damages on Plaintiff's causes of action for violations of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act, and that such damages include, but not be limited to, front pay, back pay, and damages for emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, as well as prejudgment and Plaintiff's reasonable attorneys' fees;

B.  That judgment be entered against Defendant Mark Redmiles on Plaintiff's cause of action for intentional infliction of emotional distress; and

C.  For such other and further relief as the Court deems necessary, proper, and lawful.

## **JURY TRIAL DEMAND**

Plaintiff requests a jury trial on all matters so triable.

RESPECTFULY SUBMITTED,

s/Amy L. Gaffney_____
Amy L. Gaffney (D.C.I.D. No. 6316)
GAFFNEY LEWIS, LLC
3700 Forest Drive, Suite 400
Columbia, SC  29204
T: 803.790.8838
F: 803.790.8841
agaffney@gaffneylewis.com

**ATTORNEY FOR PLAINTIFF**

This 27th day of July, 2020